Filing # 101556184 E-Filed 01/13/2020 02:37:16 PM

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT**
**IN AND FOR ORANGE COUNTY, FLORIDA**
**CIVIL DIVISION**

CRAIG DAVIS and GEOFFERY JUSTICE,
on behalf of themselves and on behalf of all
others similarly situated,

     Plaintiffs,

v.                                   Case No.:

ACE WORLD WIDE MOVING &
STORAGE, INC., a foreign incorporated
company, ACE WORLDWIDE OF CENTRAL
FLORIDA, INC., a Florida profit corporation
and ATLAS VAN LINES, INC.,
a foreign incorporated company,

     Defendants.

_____/

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Craig Davis and Geoffery Justice, (the "Plaintiffs") on behalf of themselves and those similarly situated, by and through the undersigned counsel, bring this class action against Defendants, Ace World Wide Moving & Storage, Inc. (hereinafter "Ace WW"), Ace World Wide of Central Florida, Inc. (hereinafter "Ace Florida"), and Atlas Van Lines, Inc. (hereinafter "Atlas"), collectively referred to the "Defendants" and state:

## NATURE OF THE SUIT

1.     Plaintiffs allege on behalf of themselves and other similarly situated current and former van operators employed by Defendants, who elect to opt into this action, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), that they are: (i) entitled to minimum wages from Defendants for work they performed, for which Defendants failed to compensate them at a rate of at least minimum wage; (ii) entitled to liquidated damages pursuant to the FLSA, 29 U.S.C. § 201 et seq; (iii) declaratory relief pursuant to 28 U.S.C. § 2201; and (iv) entitled to

attorneys' fees and costs.

2.      Plaintiffs allege on behalf of themselves and other similarly situated current and former moving van operators employed by Defendants, pursuant to Rule 1.220 of the Florida Rules of Civil Procedure, that they are entitled to back wages from Defendants for hours of work for which they did not receive at least the Florida minimum wage for all hours worked, in willful violation of Article X, Section 24 of the Florida Constitution ("FMWA").

3.      Under Article X, Section 24 of the Florida Constitution the terms "Employer," "Employee" and "Wage" shall have the meanings established under the Fair Labor Standards Act (FLSA) and its implementing regulations.   It is intended that case law, administrative interpretations, and other guiding standards developed under the FLSA shall guide the construction of Article X, Section 24 of the Florida Constitution and any implementing statutes or regulations.

4.      Although such prerequisites are unconstitutional, Plaintiffs have complied with all statutory prerequisites to bringing their claim pursuant to Article X, Section 24 of the Florida Constitution.

## INTRODUCTION

5.      Atlas is one of the largest moving companies in the United States and has more than 500 agents operating in every region of the United States.

6.      Ace WW and Ace Florida are agents of Atlas.  While operating under different corporate entities, Ace Florida lists the corporate entity for Ace WW at the bottom of their webpage and holds itself out to van operators as one entity.

7.      According to Ace WW's website: "As an agent of Atlas, our moving specialists provide coordinated relocation services with personal attention to your moving needs.

2

Constant communication, trust and guaranteed excellent customer service makes us the only choice for your next move." Ace Florida represents itself as an Atlas agent.

8.      Ace Florida, Ace WW and Atlas jointly employ van operators.

9.      Defendants recruit, train, coordinate and control van operators and local movers to execute commercial and local personal moves of goods and materials both within and between several states.

10.     Defendants employed Plaintiffs and those similarly situated as van operators.

11.     Plaintiffs' job, like other van operators, was to pick up, transport and deliver household and commercial goods.

12.     To the public, Plaintiffs appeared to be Atlas employees because Defendants required van operators to wear Atlas and/or Ace uniforms whenever interfacing with Altas's customers.

13.     Defendants did not track the van operators' hours of work beyond those hours tracked by the United States Department of Transportation (the "DOT").

14.     In many weeks, van operators were paid less than the federal or Florida minimum wage in violation of the FLSA and Article X, Section 24 of the Florida Constitution for each hour that they worked.

15.     Defendants required Plaintiffs to pay for repairs, lease payments, fuel, labor, load insurance, non-trucking liability insurance, and other expenses, all of which benefited Defendants. Defendants either debited Plaintiffs for these costs or advanced Plaintiffs money to cover these costs, which Defendants offset against future wages.

16.     Plaintiffs were not paid an hourly wage. Instead, Plaintiffs were paid a percentage of the line haul, *i.e.* the revenue derived from the customer. However, in many weeks

3

the line haul was less than it was originally represented to be for reasons Plaintiffs could not control, such as discounts given by Defendants to the customers.

17.     Frequently, after expenses and advances were deducted or the line haul was reduced, Plaintiffs and other van operators received no payment for their work or received less than the federal or Florida minimum wage. This was called being "in the hole."

18.     Even when Plaintiffs received advances for personal use, the advances received were less than the federal or Florida minimum wage.

19.     Defendants violated the FLSA and FMWA, by failing to pay Plaintiffs the applicable minimum wage for all hours worked in each workweek when due.

20.     Defendants' FLSA and FMWA violations were willful, malicious and deliberate.

21.     Plaintiffs seek redress for Defendants' FLSA and FMWA violations for themselves and other current and former van operators.

## PARTIES

22.     Plaintiff Craig Davis ("Davis") is a resident of Florida. Davis was employed by Defendants from approximately December 2012 until December 2018. Davis's FLSA Consent to Join is attached hereto as Exhibit "1."

23.     Plaintiff Geoffrey Justice ("Justice") is a resident of Florida. Justice was employed by Defendants from approximately October 2017 until November 2018. Davis's FLSA Consent to Join is attached hereto as Exhibit "2."

24.     Defendant Ace World Wide Moving & Storage is a registered Wisconsin corporation with a principal business address of 1900 E College Ave, Cudahy, WI 53110 which conducts business nationwide, including in Florida.

25.     Defendant Ace World Wide of Central Florida, Inc. is a registered Florida

4

corporation with a principal business address of 1125 Gills Drive, Suite 400, Orlando, FL 32824 which conducts business nationwide, including in Florida.

26.     Defendant Atlas Van Lines Inc. is a registered Indiana corporation with a principal business address of 1212 Saint George Road, Evansville, IN 47711 which conducts substantial business nationwide, including in Florida.

## JURISDICTION AND VENUE

27.     This is an action for damages in excess of $30,000.00 (thirty thousand dollars).

28.     Venue lies within Orange County because a substantial part of the events giving rise to this claim arose in this Judicial Circuit.

29.     Jurisdiction in this Court is proper as the claims are brought pursuant FLSA and FMWA to recover unpaid minimum wages, an additional equal amount as liquidated damages, obtain declaratory relief, and reasonable attorney's fees and costs.

### Ace WW, Ace Florida, and Atlas

30.     Ace WW and Ace Florida are Atlas's agents.

31.     Defendants are financially and operationally bound, essentially operating as one unit.

32.     To the public, Defendants are simply "Atlas," which is reinforced through Defendants' marketing efforts.

33.     Defendants attempted to avoid the responsibilities and expense of being an "employer" by classifying van operators as "contractors." In reality, Defendants exert significant power and control over van operators, and over their employees.

34.     Defendants' entire business is devoted to the pick-up, transport and delivery of household and commercial goods throughout the United States.

35.     Defendants have invested heavily in their moving businesses, including vehicles, equipment, infrastructure and administrative support necessary to conduct its business nationwide.  By comparison, van operators invest little besides their time and effort.

36.     Defendants each have annual gross revenues in excess of $500,000.

37.     Defendants advertise their joint operation on their respective websites.

38.     Defendants have the power to discipline and terminate van operators that don't adhere to their operational standards.

39.     Defendants control how van operators perform their work.  Defendants require van operators to follow Defendants' policies, wear Defendants' uniforms and meet its Atlas-specific criteria.

## Defendants Share Control in the Hiring of Van Operators.

40.     Ace WW and Ace Florida manage and direct recruitment of van operators for Atlas.  However, given Atlas's stringent criteria for van operators, Atlas essentially provides the guidelines that its agents must follow.

41.     Ace WW and Ace Florida mandate that their van operators follow the policies and procedures set by Atlas.

42.     The websites of both Ace WW and Ace Florida display the Atlas logo including pictures of Atlas trucks and van operators in Atlas uniforms.

43.     Atlas touts on its website that, "Atlas standards surpass even those set by the industry – the stringent AMSA* certification process known as ProMover.  If a prospective agent doesn't meet our requirements in twelve critical customer areas, they don't earn the Atlas stripes, even if they do qualify as a ProMover."

44.     Atlas has proudly stated in publications that its, "Crew Is Everything They're

Wrapped Up To Be" because "Atlas professional packers take extra measures to get your things safely from door to door, wrapping your belongings in protective stretch wraps."

45.     Atlas requires that Ace WW and Ace Florida maintain certain qualifications for its van operators, which include:

    a.    Verifiable, over-the-road, tractor-trailer driving experience with a Class "A" CDL;

    b.    Must pass all company and DOT requirements, including roadside inspection reports (PSP), DOT medical screen, pre-qualification drug screen and criminal background investigation;

    c.    Proven history of driving with a safe driving record;

    d.    Quality minded and customer-service oriented and has the power to prohibit certain drivers from being hired.

### Defendants Impose Accident Policies upon their Van Operators.

46.     Defendants have a unified Safety Policy regarding accidents for all of its van operators.  Upon information and belief, the safety policies of Ace WW and Ace Florida are directed and controlled by Atlas.

47.     Defendants reserve the right to suspend van operators from service pending an investigation into a serious accident, regardless of fault.

48.     Defendants have their own definition of "accident" for reporting purposes, which includes all accidents that the DOT deems recordable as well as all accidents that include damage to cargo or property in excess of $1,000.

49.     Defendants require van operators to follow certain protocols in an accident, which mandates that drivers:

    a.    Turn on four-way flashers and set out triangles;

    b.    Summon police and/or emergency medical personnel;

c.    Assist injured persons, but do not move them unless their life is threatened;

d.    Get the name, address, phone number and all relevant information of all parties involved and get identifying information from the other vehicle; and

e.    Not admit liability, or make verbal or written statements of any kind concerning the accident to anyone other than the investigating officer, a representative of Defendants, and/or the driver's insurance carrier.

**Defendants Impose Strict Policies upon its Drivers.**

50.    Defendants enforce policies that dictate the manner in which van operators work and penalize van operators when they do not follow these policies. These policies relate to the use of logbooks, accident responses, and other safety policies. Defendants will levy fines and in some occasions, suspend van operators who do not follow these policies.

51.    Atlas mandates that van operators wear uniforms with its logos, along with dark colored pants and shoes. As part of Atlas's customer surveys, customers are asked whether their movers and drivers were wearing the proper uniform.

52.    Atlas requires van operators to maintain conformity with its graphics, including advertising and van signage. It was mandatory for van operators to adhere to these requirements.

53.    Atlas requires van operators to maintain a Cash Reserve Account in the amount of $3,500.

54.    At the behest of Atlas, Ace WW and Ace Florida requires van operators to purchase cargo insurance when carrying Atlas loads.

55.    Additionally Atlas requires that Ace WW and Ace Florida make van operators carry their own non-trucking liability insurance and workers' compensation insurance.

**Defendants Control the Manner of the Van Operators' Work.**

56.    Defendants mandate van operators hire and work with only approved employees

8

that meet "Atlas's drug and alcohol testing policies and requirements, including specifically the requirements to timely report for drug and alcohol testing in connection with accidents and random drug tests."

57.    Defendants require all van operators to have a GPS tracking system (OmniTRACS) that Defendants use to monitor its drivers.

58.    Defendants require van operators to provide records of payments received and report them to Defendants, who then retain such records.

### Defendants Control the Pay and Day-to-Day Operations of the Van Operators.

59.    Most van operators do not understand how their pay is calculated.

60.    The primary determinant of van operators' pay is the work assigned by Defendants. Certain loads are likely to generate higher pay and others require a van operator to work for less than minimum wage.

61.    Defendants control pay and often bring pay below minimum wage by, among other things, setting the routes, fining van operators, and charging them for damaged goods.

62.    Van operators theoretically have the authority to control their routes on assignment from Defendants. However, because Atlas ultimately sets very tight schedules that the van operators cannot alter, they have no real discretion other than where they can make rest stops along the way.

63.    Van operators are not permitted to independently schedule assignments or advertise their services. Theoretically, Van operators are permitted to decline assignments. However, because Defendants ultimately control the assignment of loads, a refusal would carry serious consequences with respect to future assignments. Thus, except in very limited circumstances, van operators have no choice but to accept the assigned loads.

64.   On trucks with GPS tracking, Defendants track van operators' driving.   If Defendants believe a van operators' driving is unsafe, inconsistent with the logs or Defendants' standards, Defendants reprimand van operators.

65.   Atlas fits all of its equipment with "AtlasTRAC".   On behalf of Atlas, Ace WW's advertises on its website, "Our scheduling and monitoring capabilities add efficiency for your commercial moves.   We ensure "best routing" to prevent detours and minimize delays.   Using advanced satellite technology (AtlasTRAC™) we keep you informed on the progress of your shipment while it is in our care."

66.   Van operators agree to drive exclusively for Defendants.

67.   Van operators are completely dependent upon Defendants for work.

68.   Van operators typically do not invest a significant sum into their work, other than to lease their truck and other various tools of the trade.

69.   Van operators are skilled drivers and perform much of their job using that skill.

70.   However, van operators have little opportunity to determine their income or profit on an assignment.   Rather, van operators' income is tied entirely to the jobs Defendants assign them.

71.   Van operators have minimal opportunities to increase the profit on an assigned load.   They can only minimize their losses by avoiding mishaps and abiding by Defendants' policies.

72.   Defendants keep the most relevant employment records showing many but not all of the hours of work in the logs, safety compliance reports, and records of payments on the jobs.

**Plaintiff Craig Davis**

73.   Plaintiff Craig Davis was hired by Defendants as a van operator in December

2012.

74.     In many weeks Plaintiff Davis was employed, he drove over forty hours per week and performed compensable non-driving work for the Defendants for which he was never paid.

75.     In at least one or more workweeks, Davis was paid no wages or less than the federal or Florida minimum wage.

76.     In addition, during several weeks in which Davis drove through Florida or delivered goods to or picked up goods from Florida, Davis was not paid at least the Florida minimum wage.

77.     For example, in June, July, August, and September of 2018 Davis worked well over forty hours a week but received no pay in violation of the FLSA or in violation of Article X, Section 24 of the Florida Constitution.

78.     Defendants reduced Plaintiff Davis' line-haul commission for confusing and poorly explained reasons, withholding large amounts of money that should have been paid to Plaintiff Davis.  As a result, Plaintiff Davis was "in the hole" in one or more workweeks and received little or no pay for his work.

79.     Twice per month, Defendants charged Plaintiff Davis for workers' compensation insurance premiums, which appeared as a line item on his earnings statements.

**Plaintiff Geoffery Justice**

80.     Plaintiff Geoffery Justice was hired by Defendants as a van operator in October 2017.

81.     In many weeks Plaintiff Justice was employed, he drove over forty hours per week and performed compensable non-driving work for the Defendants for which he was never paid.

82.     In at least one or more workweeks, Plaintiff Justice was paid no wages or less than the federal or Florida minimum wage.

83.     In addition, in one or more workweeks during which Plaintiff Justice drove through Florida or delivered goods to or picked up goods from Florida, Plaintiff Justice was not paid at least the Florida minimum wage.

84.     Defendants reduced Plaintiff Justice's line-haul commission for confusing and poorly explained reasons, withholding large amounts of money that should have been paid to Plaintiff Davis.  As a result, Plaintiff Justice was "in the hole" in one or more workweeks and received little or no pay for his work.

## 216(b) COLLECTIVE ACTION ALLEGATIONS

85.     Plaintiffs assert their Count I claim under the FLSA, pursuant to 29 § 216(b), on behalf of themselves and on behalf of all other similarly situated employees currently and formerly employed by Defendants.

86.     Pending any modifications necessitated by discovery, the Plaintiffs preliminarily define the following class:

> **216(b) Class: ALL CURRENT AND FORMER VAN OPERATORS OF DEFENDANTS, WHETHER OR NOT CATAGORIZED AS EMPLOYEES, TRAINEES, OR INDEPENDENT CONTRACTORS, WHO WERE NOT COMPENSATED AT LEAST THE STATUTORY MINIMUM WAGE IN EACH WEEK.**

87.     All potential 216(b) Class are similarly situated because, among other things, they were all employees of Defendants and, upon information and belief, all suffered from the same policies of Defendants, including:

a.     They were paid by the job without regard to the number of hours worked;

b.     They each suffered from improperly made deductions from class

12

members' paychecks; and

c.     Defendants failed to pay class members at least the Florida minimum wage for each hour of work as mandated by the FLSA.

## CLASS ALLEGATIONS

88.     Plaintiffs assert their Count II claim under Article X, Section 24 of the Florida Constitution on their own behalf and on behalf of a class of persons pursuant to Rule 1.220 of the Florida Rules of Civil Procedure.

89.     Plaintiffs bring their Florida Minimum Wage Claims on behalf of all persons who were employed by Defendants at any time in the five years preceding the filing of this action, to the entry of judgment in this case (the "Class Period"), who were van operators and who have not been paid at least the applicable Florida Minimum Wage for hours worked, as required, in violation of Article X, Section 24 of the Florida Constitution (the "Class").

90.     Upon information and belief, the records, to the extent any exist, concerning the number of hours worked and amounts paid to Plaintiffs and the Class are in the possession and custody of Defendants.

91.     The Class identified above is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are hundreds of members of the Class during the Class Period.

92.     Plaintiffs' claims are typical of the claims of the Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy - - particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate

defendants.

93.     Defendants acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

94.     Pending any modifications necessitated by discovery, Plaintiffs preliminarily define the following class:

> **ALL CURRENT AND FORMER VAN OPERATORS OF DEFENDANTS EMPLOYED IN FLORIDA, WHETHER OR NOT CATEGORIZED AS EMPLOYEES, TRAINEES, OR INDEPENDENT CONTRACTORS, WHO WERE NOT COMPENSATED AT LEAST THE FLORIDA MINIMUM WAGE IN EACH WEEK FOR THE FIVE YEARS PRECEDING THIS LAWSUIT THROUGH THE ENTRY OF JUDGMENT.**

95.     All potential class members are similarly situated because, among other things, they were all employees of Defendants and, upon information and belief, all suffered from the same policies of Defendants, including:

a.     They were paid by the job without regard to the number of hours worked;

b.     They each suffered from improperly made deductions from class members' paychecks; and

c.     Defendants failed to pay class members at least the Florida minimum wage for each hour of work as mandated by Article X, Section 24 of the Florida Constitution.

96.     Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in employment law and class action litigation.

97.     Plaintiffs have the same interests in this matter as all other members of the class and Plaintiffs' claims are typical of the Class.

98.     There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

    a.   whether Defendants employed the members of the Class within the meaning of Article X, Section 24 of the Florida Constitution;

    b.   whether Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and members of the Class;

    c.   what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

    d.   whether Defendants failed and/or refused to pay the members of the Class at least the Florida Minimum Wage for certain hours worked each week;

    e.   whether Defendants are liable for all damages claimed hereunder, including but not limited to, costs, disbursements, liquidated damages, and attorney's fees; and

    f.   whether Defendants should be enjoined from such violations of Article X, Section 24 of the Florida Constitution in the future.

**<u>CLAIMS FOR RELIEF</u>**
**COUNT I:**
**BREACH OF THE FAIR LABOR STANDARDS ACT**
**(FLSA) 29 U.S.C. §§ 201 *et seq.* AS TO ATLAS AND ACE**

99.     The Plaintiffs re-allege and incorporate by reference paragraphs 1 and 5-87 of the Complaint.

100.    Plaintiffs assert this claim on behalf of themselves and the 216(b) Class pursuant to 29 U.S.C. § 216(b).

101.    During all times relevant to this action, Plaintiffs and all others similarly situated were employed by Defendants as defined by 29 U.S.C. § 203(g).

102.    Defendants failed to pay Plaintiffs and the 216(b) Class the statutory minimum wage for every hour of work.

103.    During all times relevant to this action, Plaintiffs and the 216(b) Class were

employed by Defendants in an "enterprise engaged in commerce or in the production of goods for commerce" as defined by 29 U.S.C. § 203(s)(1).

104.    During all times relevant to this action, Plaintiffs and the 216(b) Class were employed by Defendants for handling and otherwise working on goods or materials that had been moved in or were produced for commerce by any person.

105.    Defendants individually each had annual gross revenue in excess of $500,000 and employed two or more persons, including Plaintiffs, who handled and worked on materials which had been moved in interstate commerce.

106.    Plaintiffs and the 216(b) Class are individually covered by the Fair Labor Standards Act because they engaged in commerce or in the production of goods for commerce.

107.    Defendants failed to pay Plaintiffs and the 216(b) Class the minimum wage required by the FLSA.

108.    Plaintiffs and the 216(b) Class are entitled to unpaid minimum wages, unpaid overtime wages, liquidated damages, and attorneys' fees and costs, pursuant to 29 U.S.C. § 216(b).

## COUNT II
## RECOVERY OF UNPAID WAGES (STATE LAW)

109.    The Plaintiffs re-allege and incorporate by reference paragraphs 2-4, 5-84, and 88-98 of the Complaint.

110.    Plaintiffs, and those similarly situated employees, are/were entitled to be paid at least the Florida minimum wage for each hour/week worked during employment with Defendants.

111.    Specifically, Plaintiffs, and those similarly situated employees, were not paid the proper minimum wage, as required by Article X, Section 24 of the Florida Constitution.

112.   Defendants willfully failed to pay Plaintiffs, and those similarly situated employees, minimum wages for one or more weeks during Plaintiffs' employment contrary to Article X, Section 24 of the Florida Constitution.

113.   Although such prerequisites are unconstitutional, Plaintiffs have complied with all statutory prerequisites to bringing their claim pursuant to Article X, Section 24 of the Florida Constitution.

114.   As a direct and proximate result of Defendants' deliberate underpayment of wages, Plaintiffs, and those similarly situated employees, have been damaged in the loss of minimum wages for one or more weeks of work with Defendants.

115.   Plaintiffs are entitled to an award of damages in an amount equal to the relevant Florida Minimum Wage, and an equal amount as liquidated damages.

116.   Plaintiffs are entitled to an award of reasonable attorneys' fees and costs, pursuant to Article X, Section 24 of the Florida Constitution.

117.   Plaintiffs demand a trial by jury.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor against Defendants:

a.   Certification of this action as a class action pursuant to Rule 1.220 of the Florida Rules of Civil Procedure on behalf of the members of the Class and appointing Plaintiffs and their counsel to represent the Class;

b.   Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, appraising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiffs and their counsel to represent the Collective Action members;

c.   Declaring, pursuant to 29 U.S.C. §§ 2201 and 2202, that the acts and practices complained of herein are in violation of the minimum wage provisions of the

FLSA;

d.  Awarding Plaintiffs minimum wages in the amount due to them for time worked in each work week;

e.  Awarding Plaintiffs liquidated damages in an amount equal to the minimum wages award;

f.  Awarding Plaintiffs reasonable attorney's fees and costs and expenses of the litigation pursuant to 29 U.S.C. § 216(b) and/or Article X, Section 24 of the Florida Constitution;

g.  Awarding judgment for Plaintiffs and against Defendants for violation of 29 U.S.C. § 215(a)(3); as well as back pay, an equal amount in liquidated damages, front pay, compensatory damages, reasonable costs and attorneys' fees and all other equitable relief this Court deems just;

h.  Awarding Plaintiffs pre-judgment interest;

i.  Granting Plaintiffs an Order, on an expedited basis, allowing them to send Notice of this action, pursuant to § 216(b) and/or Rule 1.220 of the Florida Rules of Civil Procedure, to those similarly situated to Plaintiffs; and

j.  Ordering any other further relief the Court deems just and proper.

### JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable as a matter of right by jury.

Dated this 13th day of January, 2020.

/s/ Marc R. Edelman
**MARC R. EDELMAN, ESQ.**
Florida Bar No.: 0096342
**GEORGE G. TRIANTIS, ESQ.**
Florida Bar No. 1015574
**MORGAN & MORGAN, P.A.**
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone: 813.223.5502
Facsimile: 813.223.5402
E-mail: MEdelman@forthepeople.com
*Attorney for Plaintiffs*

Filing # 101556184 E-Filed 01/13/2020 02:37:16 PM

# EXHIBIT "1"

DocuSign Envelope ID: C43A66FB-4B68-450D-9AB4-BA6258FB57F5

IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
CIVIL DIVISION

CRAIG DAVIS and GEOFFERY JUSTICE,
on behalf of themselves and on behalf of all
others similarly situated,

     Plaintiffs,

v.                                  Case No.:

ACE WORLD WIDE MOVING &
STORAGE, INC., a foreign incorporated
company, ACE WORLDWIDE OF CENTRAL
FLORIDA, INC., a Florida profit corporation
and ATLAS VAN LINES, INC.,
a foreign incorporated company,

     Defendants.

_____/

## CONSENT TO JOIN COLLECTIVE ACTION

By my signature below, I hereby authorize the filing and prosecution of the above-styled

Fair Labor Standards Act action in my name and on my behalf by the above-representative

Plaintiffs and designate the class representatives as my agents to make decisions on my behalf

concerning the litigation, the method and manner of conducting the litigation, the entering of an

agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and other matters

pertaining to this lawsuit.

By signing below, I state that I am currently or was formerly employed as a Van Operator

for Defendants at some period from December 2012 until December, 2018.

Signature: _____    Date: _____

Printed Name: _____**CRAIG DAVIS**_____

Filing # 101556184 E-Filed 01/13/2020 02:37:16 PM

# EXHIBIT "2"

DocuSign Envelope ID: 3F4D1C8B-2C27-4C33-A6F2-C2C8175C191C

**IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
IN AND FOR ORANGE COUNTY, FLORIDA
CIVIL DIVISION**

CRAIG DAVIS and GEOFFERY JUSTICE,
on behalf of themselves and on behalf of all
others similarly situated,

     Plaintiffs,

v.                                  Case No.:

ACE WORLD WIDE MOVING &
STORAGE, INC., a foreign incorporated
company, ACE WORLDWIDE OF CENTRAL
FLORIDA, INC., a Florida profit corporation
and ATLAS VAN LINES, INC.,
a foreign incorporated company,

     Defendants.

_____/

## CONSENT TO JOIN COLLECTIVE ACTION

By my signature below, I hereby authorize the filing and prosecution of the above-styled

Fair Labor Standards Act action in my name and on my behalf by the above-representative

Plaintiffs and designate the class representatives as my agents to make decisions on my behalf

concerning the litigation, the method and manner of conducting the litigation, the entering of an

agreement with Plaintiffs' counsel concerning attorneys' fees and costs, and other matters

pertaining to this lawsuit.

By signing below, I state that I am currently or was formerly employed as a Van Operator

for Defendants at some period from October, 2017 to November, 2018.

Signature: ___*Geoffrey Justice*___         Date: ___1/13/2020___

Printed Name: ___**GEOFFREY JUSTICE**___